ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KELSEY C. DAVIDSON (CABN 322323)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    Fax: (415) 436-7027
    kelsey.davidson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM WOOD, <br><br> Defendant. | **CASE NO. 3:22-CR-00465-TLT** <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Court:          Hon. Trina L. Thompson <br> Hearing Date:   March 15, 2024 <br> Hearing Time:   10:00 a.m. |

# I. INTRODUCTION

The defendant, William Wood, possessed over 600 images/videos of child sexual abuse material (CSAM), including 26 images and 2 videos were of infants/toddlers and 6 images with sadistic, masochistic, or violent depictions. He admitted that he used these for his own sexual gratification. The defendant also distributed numerous CSAM images via Facebook Messenger. Based on the defendant's past history of a sexual offense against a minor combined with the nature and circumstances of the offense, the need to protect the public, and to provide deterrence, the government respectfully requests that the Court sentence the defendant to 120 months of imprisonment, 5 years of supervised release, restitution, and forfeiture.

# II. OFFENSE CONDUCT

The government generally agrees with the recitation of the offense conduct in in the Presentence Investigation Report (PSR) prepared by the Probation Office. PSR at ¶¶ 9-17. On August 14, 2020, the National Center for Missing and Exploited Children (NCMEC) received a tip from Meta Platforms, Inc. (Facebook) that an account belonging to the defendant had sent CSAM on August 8, 2020 to another individual, P.T.S.

The defendant sent a friend request to P.T.S. via Facebook that was neither accepted nor rejected. Two days later, P.T.S. sent the defendant a message. P.T.S. and the defendant exchanged a couple of messages, and then the defendant sent P.T.S. approximately 43 photos and one video containing CSAM. These images contained two images of infants/toddlers; 24 images of pre-pubescents believed to be over the age of a toddler, but under the age of 12; 18 images of minors believed to be over the age of 12, but under the age of 18; and one image containing sadistic/masochistic/violence of a minor under the age of 18. For example, one photograph depicts a female child estimated to be between 2 and 5 years old on all fours, shown from behind and naked from the waist down. The girl's genitals are visible, and an erect penis is inserted into her anus. A second photograph also showed a minor female, estimated to be between 2 and 5 years old, lying on her back with her dress pulled up to expose her vagina. An erect penis is inserted into the girl's mouth, and she is holding on to it with both of her hands. Additionally, the defendant sent P.T.S. at least one image containing bondage. In that image, a young female, estimated to be between 8 and 10 years old, is lying on her back fully naked. Her arms are stretched above her head

and tied back in hand restraints while what appears to be a female hand is holding a sex toy in the area of the girl's genitals.  Lastly, the defendant also sent a CSAM video to P.T.S.  In the video, an adult male is lying naked on a bed with a small, naked female child lying on top of him and another, slightly older, female child is sitting on the bed next to the younger girl.  The man moves the girl on top of his genitals and inserts his penis in her vagina.  He then thrusts several times before the video stops.

The Humboldt County Sherriff's Office (HCSO) began an investigation into the defendant and conducted a search at his residence on February 24, 2022.  HCSO seized 17 devices, and the defendant confessed to the possession and distribution of CSAM, including the possession of CSAM of "babies."  The defendant further admitted that he used some of the images for arousal purposes and that it "excited him."  The case was referred to the Federal Bureau of Investigations (FBI), and a search warrant was obtained for three of the seized devices.  The following information was found on those devices:

1. Device 1: 282 CSAM images
   a. ~18 images containing infants/toddlers
   b. ~234 images containing pre-pubescents believed to be over the age of a toddler, but under the age of 12
   c. ~25 images containing persons believed to be over the age 12, but under the age of 18
   d. ~5 images containing S&M/violence involving a person under the age of 18
2. Device 2: 2 CSAM images
   a. ~2 images containing pre-pubescents believed to be over the age of a toddler, but under the age of 12
3. Device 3: 32 CSAM images and 11 CSAM videos
   a. ~6 images containing infants/toddlers
   b. ~11 images containing pre-pubescents believed to be over the age of a toddler, but under the age of 12
   c. ~4 images containing persons believed to be over the age 12, but under the age of 18
   d. ~2 videos containing infants/toddlers
   e. ~9 videos containing pre-pubescents believed to be over the age of a toddler, but under the age of 12
   f. Additional images of clothed minors in CSAM advertisements and images advertising CSAM websites were found

Some of these images and videos included the following:

- An image of a minor female estimated to be in her early teenage years. The minor is wearing a tank top that is pulled up to expose her breasts. There is an adult male who is naked from the waist down. He is holding a gun in his right hand pointed at the minor's chin. The gun is touching the minor's chin, and she has her eyes closed as she performs oral sex on the adult male.
- An image of a young, child, estimated to be between 5 and 7 years old, lying on her back. The child is nude except for high, striped socks. The child's hands are bound above her head and her legs are bound in a manner to keep her vagina exposed while an adult male engages in vaginal intercourse with her. The child appears to be in pain.
- An image of a young female child, estimated to be between 2 and 3 years. The child is in the bathtub with an adult male, and the child is engaging in oral sex with the adult male.
- An image of a young female child, estimated to be between 2 and 5 years old, lying on her back next to an adult male. The child is nude except for a yellow and white shirt that is pulled up to expose her stomach. The adult male is nude except for a white t-shirt. The adult male's penis is inserted into the child's anus.
- A video (approximately 1 minute and 21 seconds in length) of a young female child, estimated to be between 2 and 5 years old. The child is lying on her back across from an adult male. The child is nude, and her face is visible. The male is nude but only his waist and legs are visible. The male masturbates with the child's feet. Towards the end of the video the child sneezes and appears to be on the verge of crying.

### III. PROCEDURAL HISTORY

On December 7, 2022, the grand jury returned a one count Indictment against the defendant, charging him with one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). On October 13, 2023, the defendant pled guilty to the one count Indictment in an open plea agreement. There is no plea agreement in this case.

### IV. SENTENCING GUIDELINES CALCULATIONS

The government agrees with the Probation Office's calculation of the Sentencing Guidelines in the PSR. PSR ¶¶ 36-49. Specifically, the government agrees that the total offense level is 30, and the calculations are as follows:

| U.S.S.G. Section | Points |
|---|---|
| Base Offense Level – § 2G2.2(a)(1) | +18 |
| Defendant knowingly engaged in distribution – § 2G2.2(a)(2) | +2 |
| Minor under 12 years old – § 2G2.2(b)(2) | +2 |
| Sadistic or masochistic depictions or sexual exploitation of infant or toddler – § 2G2.2(b)(4) | +4 |
| Use of computer – § 2G2.2(b)(6) | +2 |
| 600 or more images – § 2G2.2(b)(7)(D) | +5 |
| Acceptance of Responsibility – § 3B1.1(a) | -3 |
| **Total Offense Level** | **30** |

The government also agrees that the defendant is in Criminal History Category I, which yields a Guidelines range of 97 to 121 months' imprisonment.

## V.     INCREASED PENALTIES

The defendant is also subject to increased penalties, including a mandatory 10 years' imprisonment and maximum 20 years' imprisonment. Section 2252(b)(2) increases the penalties for possession of child pornography "if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children . . ."

Here, the defendant's prior conviction qualifies for the increased penalties. The defendant has a prior conviction for a violation of Penal Code 288A(b)(2), oral copulation with a person under 16 years of age while the offender is over 21 years of age. The Ninth Circuit has held that the conduct proscribed by Penal Code 288A(b)(2) "is categorically a conviction 'under the laws of any State relating to . . . sexual abuse' for purposes of § 2251(e) and § 2252(b)(2)." *United States v. Sullivan*, 797 F.3d 623, 627 (9th Cir. 2015) (finding "the district court properly applied the mandatory minimum enhancement provisions contained in both statutes of conviction."). Thus, the defendant is subject to a mandatory minimum of 10 years' imprisonment and a maximum of 20 years' imprisonment.

## VI.    APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)	the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)	the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)	the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)	the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5)	the need to provide restitution to any victims of the offense.

**VII.	RECOMMENDED SENTENCE AND SECTION 3553(A) FACTORS**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court impose a sentence of 120 months of imprisonment and five years of supervised release.  The nature and circumstances of the offense, history and characteristics of the defendant, the need to protect the public, the seriousness of the offense, and the need for deterrence all support a sentence of 120 months, which is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553.

**A.	The Nature and Circumstances of the Offense**

The possession and distribution of child pornography repeatedly revictimizes society's most vulnerable population.  Not only did the defendant admit that he looked at these images for his own sexual arousal, but he also sent them to P.T.S. via Facebook Messenger.  The Supreme Court has stated that child pornography crimes are "compounded by the distribution of images" because "the wrongs inflicted upon [the victim] were in effect repeated; for [the victim] knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed

against her." *Paroline v. United States*, 572 U.S. 434, 441 (2014).  Indeed, many of the victims have expressed the continued hurt and humiliation they face knowing that people like the defendant continue to view and disseminate photos and videos of their worst moments to other predators and the fear they feel that someone will recognize them from their CSAM.[1]

Victim 1[2] explained that it "hits [her] harder emotionally" when she realizes "how sickening it is that perpetrators view the images of [her] bring sexually abused at those ages."  Victim 2 explained, "Every time someone looks at the images they are abusing me again for their pleasure!  How many more are out there?  When will I feel free from my abuse?  It seems that this has been going on forever."  Victim 3 wrote, "I get nervous when a person looks at me too long or just more than a passing glace.  I wonder if they are putting together who I am from an image they saw on the internet."  The mother of Victim 4 series wrote, "the memories and trauma of [my daughter's abuse] still haunt her, and our family, but now, there is a new abuser.  The new abusers are the sick individuals who download her pictures, and enjoy watching her being sexually assaulted as a child. . . . Every time these pictures of my daughter are looked at and passed around, the depraved people doing this are furthering my daughter's pain, shame, and abuse . . . These vile people increase her pain, and mine. . . . I wish they know how much it hurts, and how much they are worsening our pain."  The mother of Victim 5 wrote, "Our daughter will always be a victim each time another monster 'enjoys' her videos."  Victim 12 wrote, "Every time someone else sees pictures or videos of me it feel like they are the ones who hurt me to begin with . . . Anyone who looks at these horrible pictures of me or other children are abusing us.  Anyone who looks is keeping my pain going for the rest of my life."

The defendant's actions are part of a web of depravity where predators continue to victimize those who are most vulnerable by looking at and sharing these materials.  Possession of child pornography is an especially terrible crime, and one where the circumstances of the offense warrant a significant sentence.  Victim 1 wrote that she receives multiple requests for statements on an almost weekly basis which brings her anger and grief.  She explained that she "considered the alternative of not participating legally

---

[1] Of the 54 known series, the government has received 13 victim impact statements as well as a letter from one victim's attorney detailing the harm the victims have suffered.  These have been provided to Probation, who will provide them to the Court.

[2] These victims will be identified to the defense separately.

UNITED STATES' SENTENCING MEMO         7
3:22-CR-00465-TLT

anymore, but that feels like it would bring much more grief because I would not be able to do anything to fight back anymore . . . legal proceedings give me some action to take to advocate for myself, or rather, for the younger part of me whose terrible moments are captured in the imagery. It's what I can do, but it certainly takes a toll." Society's most vulnerable victims should not have to shoulder the burden of fighting back alone. The defendant perpetuated the harm and victimization of minors, and his actions warrant a 120 month sentence.

Additionally, the defendant possessed several images and videos (and distributed three) depicting sadistic, masochistic, or violent depictions and the sexual exploitation of infants and toddlers. *See, e.g.*, *United States v. Holt*, 510 F.3d 1007, 1010 (9th Cir. 2007). One image depicted a minor female performing oral sex on an adult male while he held a gun to her head. Two other images depicted bondage. Overall, 26 images and 2 videos were of infants/toddlers and 6 images included sadistic, masochistic, or violent depictions. These contribute to the seriousness of the offense, and all of this weighs in favor of a 120 month sentence of imprisonment.

### B. History and Characteristics of the Defendant

The defendant's history and characteristics warrant a 120 month sentence. The defendant has a prior conviction for oral copulation with a person under 16 years of age when he was 32 years old. Rather than learn his lesson, the defendant has continued to engage in crimes against children. The government acknowledges that the defendant has some mitigating circumstances, but this should be weighed against the fact that the defendant has now been convicted of multiple crimes against children. Overall, the government believes that the defendant's history and characteristics warrant a sentence of 120 months.

### C. Protection of the Public, Seriousness of the Offense, and Adequate Deterrence

A sentence of 120 months is necessary to protect the public, reflect the seriousness of the offense, and provide adequate deterrence. There is a strong obligation to protect young children from abuse and deter future pedophiles. The defendant possessed and sent CSAM and did so for his sexual gratification.

The Supreme Court has recognized that "the use of children as subjects of pornography materials is harmful to the physiological, emotional, and mental health of the child." *United States v. Ferber*, 458 U.S. 747, 758 (1982). Here, the defendant's conduct caused physiological, emotional, and mental harm to the victims and the victims' families. All of the victims wrote about the continued therapy they have

needed and the constant fear and emotional trauma they live with not only by their abuse, but by the fact that people continue to look at these photographs of their pain. Victim 9 wrote, "I have suffered greatly with depression and low self-esteem. I used to be suicidal which led to many psychiatric hospital stays." She explained that having photographs of her abuse on the internet makes it "impossible" to move on, and that if those who view the photographs "think for a minute that they are not responsible because they did not take the picture or see me in person, they are dead wrong . . . because by not reporting what they saw they said it was okay that that happened to the person." Victim 10 said he feels "tortured" by what happened. Victim 11 explained that the fact that someone is looking at photos of his abuse "makes me feel violated, and it gives me the jeebers." The adoptive mother of Victims 6-8 from wrote that her boys lived in a "house of horrors" where the photos of the abuse are "permanent reminders of perverted sexual victimization." She explained, "[e]very time a deranged pervert posts and reposts these graphic images of my sons, our nightmare occurs again and again. For I know that someone is deriving sick sexual pleasure from viewing pictures of my sons being raped. Every time that another pervert gets caught with my sons' images, the nightmare occurs all over again, and again, and again." Each victim impact statement contained statements similar to this. By looking at the photos and videos and sending a subset of them to P.T.S., the defendant has perpetuated the harm the victims have suffered. A sentence of 120 months will protect the public, reflect the seriousness of the offense, and provide adequate deterrence.

## VIII. RESTITUTION CALCULATION

Restitution for victims of child pornography offenses is mandatory under 18 U.S.C. § 2259. Victims are statutorily entitled to restitution under the provisions of the Mandatory Victim Restitution Act of 1996, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (the AVAA), and the Mandatory Restitution for Sexual Exploitation of Children Act of 1994. Specifically, in child pornography trafficking cases—which is defined to include offenses under 18 U.S.C. § 2252—the Court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the defendant's crime, and then "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2); *see also Paroline*, 572 U.S. 457, 457–62 (2014). Restitution in child pornography cases serves "twin goals of helping the victim achieve eventual restitution for all her

child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." *Paroline*, 572 U.S. at 457. To the extent there is a dispute about the correct amount of restitution, it is the government's burden to demonstrate the amount of the loss to the victim by a preponderance of the evidence. *See United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) (citing 18 U.S.C. § 3664(e)).

The government has received restitution requests from seven victims at the time of filing. Based on these, the government agrees with Probation's calculation of $35,000 in restitution. PSR at ¶ 90. Specifically, the government agrees that restitution is due as follows:

| Victim | Restitution |
|---|---|
| J.D.[3] | $3,000 |
| A. | $3,000 |
| J. | $3,000 |
| I. | $3,000 |
| A. | $3,000 |
| S. | $10,000 |
| L. | $10,000 |

## IX. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 120 months of imprisonment followed by five years of supervised release. The Court should also order the defendant to pay $35,000 in restitution and to forfeit his electronic devices as described in the PSR.

DATED: March 8, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Kelsey C. Davidson*
KELSEY C. DAVIDSON
Assistant United States Attorney

---

[3] The victims are identified by initials here but are named in the PSR. PSR at ¶ 90.